## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

SABAS IBARRA,                                )
                                             )
          Petitioner,     )
                                             )
v.                                           )    1:11CV530
                                             )
ASST. SUP. R.R. RIVENBARK,                   )
                                             )
          Respondent.     )

### MEMORANDUM OPINION, ORDER AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entry 2.) On April 13, 2007, in the Superior Court of Davidson County, a jury convicted Petitioner of trafficking in cocaine by transportation and trafficking in cocaine by possession in cases 05 CRS 56708 and -56709. (Id. §§ 1, 2, 5.) Petitioner received consecutive prison sentences of 175 to 219 months. (Id. § 5.) Petitioner's direct appeal ended when the North Carolina Supreme Court denied discretionary review on August 26, 2008. State v. Ibarra, 666 S.E.2d 767 (N.C. 2008). Next, on November 6, 2008, Petitioner filed an application for a writ of habeas corpus with the North Carolina Supreme Court, which denied the application on December 3, 2008. State v. Ibarra, 362 N.C. 685, 670 S.E.2d 903 (2008). Petitioner filed nothing more in the state courts until he submitted a motion for appropriate relief ("MAR") in Davidson County on October 12, 2009. (Docket Entries 5-6 to 5-14.) After the denial of the MAR (Docket Entry 5-15), Petitioner sought a writ of certiorari from the North Carolina Court of Appeals (Docket

Entry 5-16), which denied the writ on November 24, 2010 (Docket Entry 5-17). Finally, on February 10, 2011, Petitioner filed a petition for a writ of mandamus with the North Carolina Court of Appeals, which denied it on February 24, 2011. (Docket Entry 5-18.)

On June 28, 2011, Petitioner signed his Petition as having been mailed to this Court on that date. (Docket Entry 2 at 20.)[1] The Court received the Petition on July 5, 2011. (Id. at 1.) Respondent moved for dismissal of the Petition as time-barred. (Docket Entry 4.) Petitioner responded in opposition (Docket Entry 9) and submitted additional materials (Docket Entry 10), which the Court (per United States Magistrate Judge P. Trevor Sharp) accepted (Docket Entry 11). Additionally, Petitioner has filed a Motion for Leave to File an Amended Petition and to Supplement his Response to the Motion to Dismiss (Docket Entry 15) and a Second Motion for Leave to Amend to Withdraw Ground Five of the Petition (Docket Entry 18). Those Motions by Petitioner will be granted.

## **Petitioner's Claims**

The Petition raises five grounds for relief: (1) that the trial court erred in allowing the testimony of an SBI agent as an expert witness and that the state appellate courts erred in denying his claims based on those facts (Docket Entry 2, § 12, Ground One); (2) that a State's witness gave misleading testimony at trial (id., Ground Two); (3) that another of the State's witnesses

---

[1] Page citations for this document refer to the pagination in the CM/ECF footer, rather than the pre-printed pagination on the form document.

committed perjury and withheld exculpatory evidence (id., Ground Three); (4) that the alleged perjury and discovery violations constituted prosecutorial misconduct (id., Ground Four); and (5) that his convictions violated the constitutional protections against double jeopardy (id., Ground Five). In his Brief Supporting his Motion to Amend, Petitioner identifies a sixth claim of ineffective assistance of counsel at "all stages" of trial and on appeal. (Docket Entry 16 at 2.)

## Motion to Dismiss

Respondent requests dismissal on the ground that the Petition was filed[2] beyond the one-year limitation period imposed by 28 U.S.C. § 2244(d)(1). In order to assess this argument, the Court first must determine when Petitioner's one-year period to file his § 2254 petition commenced. In this regard, the United States Court of Appeals for the Fourth Circuit has explained that:

---

[2] "In [Houston v. Lack, 487 U.S. 266 (1988)], the Supreme Court held that a *pro se* prisoner's notice of appeal is filed on the date that it is submitted to prison officials for forwarding to the district court, rather than on the date that it is received by the clerk." Morales-Rivera v. United States, 184 F.3d 109, 110 (1st Cir. 1999). At least eight circuits "have applied th[is] prisoner mailbox rule to [establish the 'filing' date of] motions under 28 U.S.C. § 2254 or § 2255." Id. at 110-11 & n.3. In two published opinions issued since that consensus emerged, however, the United States Court of Appeals for the Fourth Circuit has declined to decide whether the prison mailbox rule applies in this context. See Allen v. Mitchell, 276 F.3d 183, 184 n.1 (4th Cir. 2001) ("Allen's petition was dated March 9, 2000, and it should arguably be treated as having been filed on that date. Cf. United States v. Torres, 211 F.3d 836, 837 n.3 (4th Cir. 2000) (declining to decide whether prison mailbox rule applies to filing of federal collateral review applications in district court). We take no position on that question here."); but see Smith v. Woodard, 57 F. App'x 167, 167 n.* (4th Cir. 2003) (implying that Houston's rule governed filing date of § 2254 petition); Ostrander v. Angelone, 43 F. App'x 684, 684-85 (4th Cir. 2002) (same). Because the difference between the date Petitioner signed his Petition (i.e., the earliest date he could have given it to prison officials for mailing) and the date the Clerk received it would not affect disposition of the timeliness issue, the Court need not consider this matter further.

Under § 2244(d)(1)(A)-(D), the one-year limitation period <u>begins to run from</u> the latest of several potential starting dates:

(A) <u>the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review</u>;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) <u>the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence</u>.

<u>Green v. Johnson</u>, 515 F.3d 290, 303-04 (4th Cir. 2008) (emphasis added).

The record does not reveal any basis for concluding that subparagraphs (B) or (C) of § 2244(d)(1) apply in this case.[3] Pursuant to subparagraph (A), Petitioner's one-year limitation period commenced on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," 28 U.S.C. § 2244(d)(1)(A). The Court thus must ascertain when direct review (or the time for seeking direct review) of Petitioner's underlying conviction(s) ended.

---

[3] Petitioner argues that subparagraph (B) applies based on his limited resources and a lack of legal counsel. (Docket Entry 9 at 10-13.) However, those arguments represent matters in the nature of a request for equitable tolling not a description of State impediments. Petitioner's Response also seeks to invoke subparagraph (C) to the extent any Supreme Court case affects his claims without citing any such case. (<u>Id.</u> at 13-14.) Regardless, no qualifying Supreme Court cases appear to apply to Petitioner's claims.

-4-

Here, Petitioner's direct appeal concluded with the North Carolina Supreme Court's denial of his petition for certiorari on August 26, 2008. Petitioner then had 90 days to file a petition for certiorari with the United States Supreme Court, but did not do so. Thus, his conviction became final on November 24, 2008, at which time his one-year federal habeas filing period ordinarily would have commenced. See generally Harris v. Hutchison, 209 F.3d 325, 328 & n.1 (4th Cir. 2000). However, the one-year limitation period is tolled for "the entire period of state post-conviction proceedings, from initial filing to final disposition by the highest court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek further appellate review)." Taylor v. Lee, 186 F.3d 557, 561 (4th Cir. 1999). Because Petitioner filed a habeas corpus petition with the North Carolina Supreme Court on November 6, 2008, Respondent concedes that Petitioner's year to file did not actually begin to run until December 3, 2008, when the North Carolina Supreme Court denied that petition. (Docket Entry 5 at 4.)

Petitioner's year to file under subparagraph (A) then ran until Petitioner submitted his MAR on October 12, 2009. At that point, he had less than two months left to file his habeas petition in this Court. The filing of the MAR tolled the running of the limitation period until November 24, 2010, when the North Carolina Court of Appeals declined to review the denial of the MAR. Petitioner's time to file then began to run again, before expiring in January of 2011. Petitioner later filed a petition for a writ

-5-

Case 1:11-cv-00530-NCT-LPA   Document 41   Filed 03/29/13   Page 5 of 9

of mandamus with the North Carolina Court of Appeals, but this could not have tolled the running of the limitations period because it had already expired. See Minter v. Beck, 230 F.3d 663, 665 (4th Cir. 2000). Finally, on June 28, 2011, Petitioner signed his Petition and mailed it to this Court. By that time, the Petition was untimely under subparagraph (A).

Petitioner attempts to counter the timeliness problem by arguing for an extension of tolling for three 90-day periods following the denial of his state habeas petition, the denial of his petition for certiorari following the denial of his MAR, and the denial of his petition for a writ of mandamus. (Docket Entry 9 at 9.) The 90-day period accounting for the opportunity to seek certiorari from the United States Supreme Court applies only in calculating the finality of Petitioner's conviction on direct review, not the seeking of certiorari from denials of attempts at collateral review in the state courts. Crawley v. Catoe, 257 F.3d 395, 399-400 (4th Cir. 2001).

Subparagraph (D) possibly applies to Petitioner's third claim for relief because the Petition states that Petitioner did not receive some of the information supporting that claim until 20 months after his conviction. (Docket Entry 2, § 12, Ground Three.) Assuming purely for the sake of argument that Petitioner could not have procured the information underlying Claim Three any earlier, his year to file that claim would have begun to run 20 months after his trial, or approximately the middle of December of 2009, which would provide Petitioner with only about two weeks to file beyond

-6-

the deadline calculated under subparagraph (A). A few weeks makes no difference because, as already discussed, the Petition was filed several months out of time. No part of the Petition is timely under either subparagraph (A) or subparagraph (D).

Petitioner next argues that his attempts to gather further evidence and to seek legal counsel or advice from North Carolina Prisoner Legal Services ("NCPLS") and other groups extended the one-year period to file. (Docket Entry 9 at 10-13.) This argument appears to represent a request for equitable tolling, which the Supreme Court has ruled generally applicable to the one-year limitation period under § 2244(d), Holland v. Florida, 560 U.S. ___, ___, 130 S. Ct. 2549, 2562 (2010). Equitable tolling may apply when a petitioner "shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Id. (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)).

Petitioner's contentions do not qualify him for equitable tolling. Attempts to gather information did not affect the filing of the Petition, because Petitioner has conceded that he had all of the information used in the Petition within 20 months of his trial and yet, as discussed above, even crediting that date as the start of the limitations period, the Petition was untimely. Waiting for a response from NCPLS while the time to file in this Court expires does not generally entitle a petitioner to equitable tolling because a petitioner who can file after waiting can also file earlier. See Hood v. Jackson, No. 5:10-HC-2008-FL, 2010 WL

-7-

4974550, at *2 (E.D.N.C. Dec. 1, 2010) (citing cases); Dockery v. Beck, No. 1:02CV00070, 2002 WL 32813704, at *2 (M.D.N.C. August 1, 2002) (Beaty, J., adopting recommendation of Eliason, M.J.) (unpublished). Petitioner gives no reason why that general rule lacks application in the instant case. More generally, "an unsuccessful search for counsel [i]s not an extraordinary circumstance warranting equitable tolling." Jihad v. Hvass, 267 F.3d 803, 806 (8th Cir. 2001); see also Jenkins v. Johnson, No. 2:09cv32, 2009 WL 1923938, at *4 (E.D. Va. June 29, 2009) (unpublished) ("[D]elays due to seeking legal advice . . . have consistently been held not to constitute the 'extraordinary circumstances' to warrant the application of equitable tolling.").

Finally, Petitioner raises arguments referring to a "'fundamental miscarriage of justice,'" "'cause and prejudice,'" and actual innocence. (Docket Entry 16 at 4-5.) Such claims are often used to attempt to satisfy the "miscarriage of justice" exception to procedural default. See Schlup v. Delo, 513 U.S. 298, 313-15 (1995). A significant question exists as to whether a claim of "actual innocence" can relax the statute of limitation imposed by § 2244(d). Compare Souter v. Jones, 395 F.3d 577, 597-602 (6th Cir. 2005) (recognizing actual innocence exception), with Escamilla v. Jungwirth, 426 F.3d 868, 871-72 (7th Cir. 2005) (ruling that actual innocence has no bearing on time-bar). If such an exception exists, Petitioner generally would have to produce new evidence showing that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."

-8-

Schlup, 513 U.S. at 327. At a minimum, Petitioner would have to show "factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623 (1998). Here, Petitioner does not even begin to satisfy these requirements. His claims seek to impeach or contest evidence from his trial, but he has not produced evidence of actual innocence.

In sum ,the Petition is untimely.

**IT IS THEREFORE ORDERED** that Petitioner's Motion for Leave to File an Amended Petition and to Supplement his Response to the Motion to Dismiss (Docket Entry 15) and Petitioner's Second Motion for Leave to Amend to Withdraw Ground Five of the Petition (Docket Entry 18) are granted.

**IT IS RECOMMENDED** that Respondent's Motion to Dismiss (Docket Entry 4) be granted, that the Petition (Docket Entry 2) be dismissed, and that Judgment be entered dismissing this action.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

Dated: March 29, 2013